PEOPLE ex rel. SCHULZ v. MURRAY et al., Commissioners.

(Supreme Court, Appellate Division, First Department.    March 20, 1896.)

INTOXICATING LIQUORS—REFUSAL OF LICENSE—BAD REPUTE OF PREMISES.

It is within the discretion of the commissioners of excise to refuse a license to sell liquors in premises which have become of bad repute and a resort for disorderly persons, and for which reason the license of a tenant had been recently revoked.

Appeal from superior court of New York City, special term.

Proceedings in certiorari, on relation of Julius Schulz, against Joseph Murray and others, commissioners of excise of the city of New York, to review their action in refusing a license to sell liquors to the relator.    From an order in effect reversing the action of the commissioners, they appeal.    Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

C. L. Hoffman, for relator.

J. M. Mayer, for commissioners.

PATTERSON, J.    This is an appeal from an order made at a special term of the superior court of the city of New York, on the 30th day of April, 1895, in a certiorari proceeding against the board of excise of the city of New York, and in which proceeding was brought up for review the action of the commissioners of excise in refusing to grant to the relator a license to sell liquor on the premises No. 319 Bowery, in the city of New York.    The order appealed from, in effect, reversed the action of the commissioners, and directed them to grant the application of the relator, and to issue to him a license to sell liquor on the premises in question, in accordance with his application. The refusal of the commissioners to grant the relator's application was based upon the distinct ground that the premises in question were not a fit place in which to allow the sale of liquor, and that is the only reason appearing in the record as inducing them to withhold a license.    The application was made to them on or about the 20th of March, 1895; and on the 9th of April, 1895, they announced their determination, embodying their decision in a memorandum in the following words:

"April 9th, 1895.

"The application of Julius Schulz for an hotel license for the premises 319 Bowery is rejected, and a license refused, for the reason that the said place is not a fit and proper place to be licensed, reference being had to the proceedings of the board on the complaint for the revocation of a license for said premises issued to Joseph Hirschhorn, and to the decision of the board under date of February 9th, 1895, revoking said license, for the reason that the said premises had been permitted to become disorderly and a resort for disorderly persons."

It is apparent from the language of this memorandum that the reason assigned for refusing the license to the relator was that the place sought to be licensed was not a fit and proper one, and the evidence upon which they acted was the record of a prior finding made by them, showing conclusively that on the 9th of February, 1895, it had been determined that the same premises had been permitted to become disorderly; the meaning of which is amplified in their return by the statement that "the license of one Joseph Hirschhorn for said premises was revoked for permitting the premises to become disorderly, and the resort of disorderly and immoral persons, and a place for persons to visit for lewd, obscene, and indecent purposes, and the resort of prostitutes and thieves."

The relator knew of the bad character of these premises, for he himself testified that it was at his instigation or procurement that the license of Hirschhorn had been revoked.    The character of the premises was therefore clearly established, and it was entirely within the discretion of the excise commissioners to determine whether or not they would allow a license to issue to sell liquor upon premises with such a stigma upon them.    It is not a fact that the revocation of the license was based upon the character of the tenant, but upon the use to which the premises had been put, by reason of which use they had become of ill repute, and unfit to be licensed.    It was the fact that the property had been used for disorderly purposes, by the fault of the tenant, and that the license was revoked; and the refusal to issue a new license is clearly based upon the character the premises

had acquired as a place of resort for lewd and disreputable persons, and that was a sufficient reason for the commissioners' action. As was said in Michael's Appeal, 63 Conn. 583, a building which has become the abiding place of either lawbreakers or of crime cannot be a suitable place in which to sell liquors. A building which has been used for a long period to violate law is not a suitable place in which to sell liquors.

There was nothing before the commissioners to show that the character of these premises had in any way changed, and no real assurance that they would not be resorted to by persons of the same stamp as those who had frequented it previously. The only effort made in that direction by the relator was to show that he was a person of good character, and that he intended to keep a lodging house for men. The commissioners were not bound to act only upon such evidence which, as matter of fact, so far as this record shows, fell far short of what the relator claims. The only witness appearing before the commissioners to testify to the character of the relator was not able to testify even that he was acquainted with him, for, when asked whether he knew the relator, the answer of the witness was that he had heard of him. The premises, in the judgment of the commissioners, stood condemned as an improper place for the sale of liquor. There was no evidence to show that the reputation of such premises had been redeemed. It is idle to say that the action of the commissioners places a perpetual disability upon the premises. It may become a question of fact for them to determine hereafter whether the place has ceased to be a resort for disorderly persons, and they were quite justified in exercising their discretion, and in refusing the license applied for by the relator within six weeks after the premises had been condemned as unfit to be licensed.

The order of the superior court must be reversed, and the writ of certiorari dismissed, with $10 costs and disbursements of appeal, and costs in the court below. All concur.